NEW CASTLE NORTHERN R. CO. *v.* SIMPSON.

*(Circuit Court, W. D. Pennsylvania. March 9, 1885.)*

1. RAILROAD COMPANY—CONSTRUCTION CONTRACT ULTRA VIRES—COMPENSATION OF CONTRACTOR.
   A court of equity, at the instance of a railroad company, having set aside a construction contract as *ultra vires, held,* that the corporation must account for benefits received from partial performance, and that the contractor was not to be put off with a bare reimbursement of his actual outlay, but was entitled to receive for what he had done such compensation as any other railroad contractor could recover therefor, in the absence of express agreement as to price.

2. SAME—INTEREST CHARGEABLE.
   *Held, further,* that the corporation was justly chargeable with interest on the amount found to be due the contractor when the work was stopped.

In Equity. *Sur* exceptions to master's report.

*J. B. Brawley* and *R. B. McComb,* for exceptant.

*D. B. Kurtz* and *Marshall Brown, contra.*

ACHESON, J. The established rule in equity is that a corporation is accountable for benefits which it has received under an *ultra vires* transaction. Green's Brice, Ultra Vires, 717. Hence, in holding that the defendant's compensation for the materials furnished and work done by him should be measured by what it would have cost the plaintiff company to employ a responsible contractor to provide the same materials and perform the same work, the master, I think, adopted a just standard. While the defendant is not under any guise to receive damages for the loss of his bargain, yet he is not to be put off with a bare reimbursement of his actual outlay. He is entitled to be paid for what he has done fair rates, such as any other railroad

contractor might have recovered therefor, in the absence of express agreement as to compensation. The above rule excludes all the losses and expenses specified in the defendant's exception, and the master was clearly right in disallowing them.

I cannot say that the master erred in adopting, in the main, the estimate of Charles E. Fink, as to the values of the materials furnished and work done. The master had the advantage of seeing and hearing the witnesses, and every presumption is to be made in favor of the correctness of his conclusions upon questions of fact. Besides, compared with the estimates of the other witnesses, it is not evident that Mr. Fink's values are excessive. In so far as the exceptions allege mistakes committed by the master in respect to the quantities of materials furnished and amount of work done, they do not seem to me to be well founded. The plaintiff's fifth and sixth exceptions go to the allowance to the defendant of the *value* of that part of the work done by Weaver (a subcontractor under Reed) before the date of the defendant's contract, instead of what the defendant actually *paid* therefor. The fact is that the defendant took the Weaver contract off Reed's hands, and paid for all the work done by Weaver. Hence the master was of opinion that the defendant is entitled to receive the value of the whole of that work. Now, even if this view is a questionable one, still, it seems to me that there is another ground for sustaining the master in this particular. He was not furnished with any evidence whereby he could distinguish between the work done by Weaver before the date of the defendant's contract, and that done by him afterwards. He was therefore obliged to treat the work as a whole, under the proofs as submitted to him.

In fixing the value of the materials for the unfinished bridge, I am not convinced that the master has erred. But it is not so clear to me that Mr. Youtz may not have a claim thereon. The transaction was not a sale by him of bridge materials, but a contract whereby he undertook to build a bridge, furnishing the materials. Now, in the performance of the contract he has been interfered with; and it may be that his title to the unused materials was not extinguished. Hence the defendant should be required either to deliver to the plaintiff an acquittance from Mr. Youtz, or give security to indemnify the plaintiff from any claim he may have on account of said materials. This, however, can be provided for in the final decree.

Notwithstanding the few changes made by the master, the result shows that substantially he adopted Mr. Fink's estimate, the details of which appear in the defendant's Exhibit A. Now, in view of the friendly relation existing between the two, it is a reasonable conclusion that Mr. Fink's estimate does the defendant full justice. Beyond question that estimate includes a general contractor's profit. Indeed, the doubt in my mind is whether the profit thus allowed is not too liberal. In some particulars it strikes me as extreme. For example, Weaver was paid for earth excavation 23 cents, and for loose

rock and hard-pan 40 cents per cubic yard; yet for this identical work Mr. Fink allows the defendant 35 cents and 75 cents. For other earth excavation the defendant himself did, he is allowed 50 cents per cubic yard. If Mr. Fink thought the defendant was entitled to anything further, surely he would have set it forth in his carefully prepared estimate. When, under examination as to the rates fixed by him for work done and materials furnished, he recognizes such rates to be at a "fair market value," a "fair market contract price," a "fair contract price," etc. Nevertheless the master has added to his estimate of $52,233.42, 10 per centum. Undoubtedly the witnesses generally do say that a percentage is to be added to their several estimates, and the master fell in with this current of testimony. Mr. Fink, however, speaks very guardedly of augmenting *his* estimate by any additional percentage. When pressed by the defendant's counsel he did finally express the opinion that there should be such allowance, but he put it on the ground of supposed injurious delays in the work, for which the railway company was responsible. But of such delays between October 8, 1883, when the defendant began work, and December 15, 1883, when the bill in this case was filed, I find no satisfactory evidence. When the bill was filed it amounted to an election on the part of the company to rescind the construction contract as *ultra vires*, and thereafter the company was not answerable for delays. Especially was it not responsible (as Mr. Fink evidently assumed) for any interruption of the work consequent upon the preliminary injunction granted by the court of common pleas. It is true, this court modified that injunction so as to leave the defendant free to go on with the work if he saw fit to take the risk; but this was done chiefly because it was represented that the unfinished work was in such a state as to require immediate attention on the part of the contractor. Upon the whole I feel constrained to sustain the plaintiff's exception (No. 24) to the master's allowance of 10 per centum upon his general estimate.

For the reasons stated by the master, the item of $556.69, for engineering expenses, is, I think, a proper charge against the railway company.

Finally, I am of opinion that the plaintiff company is justly chargeable with interest on the amount found to be due to the defendant when the work was stopped. Green's Brice, Ultra Vires, 728. No equitable reason appears for denying interest. It is not shown or pretended that the company ever made a tender of money to the defendant, or set apart or kept on hand a fund to pay him. The result, then, reached by the court, after a very careful consideration of the case, is that the only exception to be sustained is the one relating to the allowance of 10 per centum upon the master's estimate.

And now, March 9, 1885, all the exceptions to the master's report are overruled, save the twenty-fourth exception filed by the plaintiff, which is sustained.